## AFFIDAVIT OF SHEILA R. MAGOON

I, Sheila R. Magoon, being duly sworn, hereby depose and state as follows:

## BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed as such since September 2003. I have been assigned to the Economic Crimes Squad in the Boston Field Office since 2004. I am also a certified public accountant.

2. I submit this Affidavit in support of a criminal complaint charging STEPHANIE L. FOX ("FOX") with bank fraud in violation of 18 U.S.C. § 1344.

3. This Affidavit is based on statements made to me by witnesses and others assisting with the investigation and my review of business records and other documents.

4. This Affidavit does not detail all of the facts known to me regarding this matter, but instead relates only those facts that I believe are necessary to establish the requisite probable cause for issuance of the requested complaint and arrest warrant.

## BANK FRAUD

5. On August 24, 2015, Boston Police Department Detective Steven Blair received a complaint about FOX from Victim 1, who reported that FOX had stolen money from Victim 1 and his wife, Victim 2, while FOX was employed as the nanny for their children. Victim 1 reported that FOX had taken checks from Victims 1 and 2's checkbook, wrote them payable to herself, forged signatures, and cashed them. As of August 24, 2015, Victims 1 and 2 had determined the total amount of fraudulent checks to be approximately $230,000.

6. On September 14, 2015, Detective Blair and I interviewed Victims 1 and 2 together. They stated as follows, among other things: FOX worked as a nanny for their children from approximately February 2013 until August 24, 2015. On August 24, 2015, Victim 2

reviewed a recently received bank statement for a joint checking account at Bank of America, NA ("Bank of America"), account number ending with 4615, held in the names of Victims 1 and 2. Victim 2 stated that it was the first statement she could recall seeing for that account in a very long time.  After noticing two checks drawn on the account for large amounts ($9,875 and $8,353), Victim 2 accessed the checking account online to review those checks.  She saw that both of the checks were made payable to FOX and purported to have been signed by Victim 2.  Victim 2 stated that none of the handwriting on those two checks, including the signature, was hers. Victim 2 investigated the account as far back as July 2014, which was the earliest available online. She discovered more than 50 checks payable to FOX which purported to bear her signature, but which in fact had been forged.  Victim 2 stated that neither she nor her husband had ever given FOX permission to write a check on their bank account or sign either of their names on a check.

7. Victim 2 advised that after discovering the forged checks, she instructed her husband to go to the nearest Bank of America and close the account.  They also obtained paper copies of all checks which bore forged signatures.  Victim 2 provided investigators with a list of those checks, as well as copies.  During the interview, Victim 2 identified 65 checks dated from April 2014 through August 2015, totaling $281,917.80, which bore forgeries of her signature, all of which were payable to FOX.

8. Victim 2 further advised that on August 24, 2015, after discovering the forged checks, she confronted FOX about it and FOX stated that she was sorry.  When Victim 2 asked FOX whether she was aware that the total amount was more than $270,000, FOX said she did not realize it was that big.  FOX told Victim 2 she started stealing the money around February or March of 2014.  FOX did not deny writing the checks.  Victim 2 asked FOX whether she had been taking the account statements, and FOX admitted she had ripped them up and put them in the recycling bin.  Apparently as an explanation for her actions, FOX stated that her ex-boyfriend was

on drugs. When Victim 2 pointed out that some of the checks were written and cashed after FOX had broken up with that boyfriend, FOX did not respond. FOX admitted to Victim 2 that she had had problems like this in the past but not as significant. When Victim 2 asked FOX whether FOX's grandparents knew, FOX said yes and that they had tried to help in the past and that just made it worse.

9. On September 17 and 18, 2015, Detective Blair interviewed FOX who stated as follows, among other things: FOX began stealing checks from Victims 1 and 2's checkbook in 2014. FOX would fill out the checks, sign Victim 2's name on them, and deposit them into FOX's bank account at Bank of America. FOX used the money to purchase jewelry including a diamond pendant necklace and three Movado watches. She also used the money for travel, including trips to the Bahamas, Aruba, Hawaii, Newport, Cape Cod and Disney. FOX also made a $10,000 down payment on a new truck. FOX thinks she stole approximately $280,000 and was told this amount by Victim 2. FOX reviewed copies of the 65 checks identified by Victim 2 as bearing her forged signature, and FOX admitted that she wrote each of the checks and signed Victim 2's name to them. During the September 17, 2015 interview, FOX hand-wrote the following in her own words, and signed it:

> I, Stephanie Fox, took checks from the [Victims 1 and 2] family from mid 2014 until Aug. 2015. This was done on impulse, as a way to support a lifestyle that was beyond my means. I have viewed the checks that detective [sic] Blair has shown me and they are the checks. I gave one diamond necklace that was purchased with the checks cashed.

10. On September 17, 2015, FOX gave the diamond pendant necklace to Detective Blair. On September 18, 2015, FOX gave Detective Blair three Movado watches.

11. Among the checks which FOX wrote payable to herself on Victims 1 and 2's account, and forged Victim 2's signature to, the first three were the following: 1) $847.00 check negotiated on or about 5/20/2014; 2) $1,046.00 check negotiated on or about 5/27/2014; and 3) $1,500.00 check negotiated on or about 5/28/2014. According to records Victims 1 and 2 obtained from Bank of America, FOX negotiated each of those checks at a Bank of America branch office, either by depositing them to FOX's own account or cashing them.

12. At all times material to the allegations in this Affidavit, Bank of America, N.A., was a financial institution and its deposits were insured by the Federal Deposit Insurance Corporation.

13. Bank of America has advised that under applicable statutes, for the 30-day period after it first sent Victims 1 and 2 an account statement which included checks forged by FOX, Bank of America was at risk of having to reimburse Victims 1 and 2 for funds Bank of America disbursed from Victims 1 and 2's account based on FOX's presentation to it of forged checks.

## CONCLUSION

14. Based on my knowledge, training and experience and the facts set forth in this Affidavit, I have probable cause to believe and do believe that, between at least April 2014 and

August 2015, FOX committed bank fraud in violation of 18 U.S.C. §1344.

        Sworn to under the pains and penalties of perjury.

        */s/ Sheila R. Magoon*
        Sheila R. Magoon, Special Agent
        Federal Bureau of Investigation

Sworn to and subscribed before me October _5_ , 2015

        */s/ Donald L. Cabell*
        United States Magistrate Judge
        DONALD L. CABELL